[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This contested dissolution of marriage action having a return date of August 17, 1999 was heard on November 1, 2000 and February 5, 13, and 14, 2001. The parties were married on June 22, 1980 in Woodbridge, Connecticut. There are two minor children born issue of the marriage, Emily Aronow born November 11, 1984 and Jacob Aronow born July 3, 1990. The marriage of the parties has broken down irretrievably without prospect of reconciliation; therefore, the marriage is dissolved on the grounds of irretrievable breakdown.
The plaintiff wife is 44 years of age and has a B.A. from the University of Connecticut and a Master of Health Science Degree from Quinnipiac University. She describes her health as excellent, however, she does take medication for rheumatoid arthritis. The plaintiff is presently employed as a physicians's assistant earning approximately $56,000 per year. Early in the marriage, she worked at various jobs in the interior design field and also ran her own business. In 1990, when the defendant lost his job, she went to work at SNET Credit where she was able to obtain health insurance benefits for the family.
The plaintiff came to the realization that her husband's income and her earning capacity were not enough to meet the family's needs. After doing research, she decided to become a physician's assistant. She began taking courses in the fall of 1993 and in May of 1995 began her studies full-time; in 1997 she obtained her M.S. degree. She began work as a physician's assistant in May 1998 earning approximately $51,000 per year. To finance her Postgraduate degree she incurred student loans of approximately $46,000 which will be addressed below.
The plaintiff demonstrated tremendous motivation and determination in resuming her studies and obtaining a degree which allowed her to enter a CT Page 3733 profession that greatly increased her income. While she was studying full-time, the defendant did assume the bulk of the child care responsibilities.
The plaintiff has received a significant amount of jewelry from her mother and she has made modest purchases of jewelry during the marriage. On her financial affidavit she has valued her jewelry and silver at $29,875. She owns Fleet Bank stock valued at $1,671. The plaintiff has an IRA with a balance of $15,824 and a TIAA/CREF account of $2,344. The couple have a joint account at Merrill Lynch that has a balance of $6,504. Prior to the commencement of this action the plaintiff withdrew $8,000 from this joint account which she used for her attorney's fees. There are joint tax refunds being held in escrow by counsel in the total amount of $1,289.
The defendant husband is 49 and has a B.A. degree from the University of Hartford and a MA. degree from Fairfield University; both degrees are in communications. He is presently employed as the Senior Public Advocate for the city of New Haven and earns approximately $45,500 per year. The defendant previously held this position until 1990 when the mayoral administration changed. In 1994 he returned to his present position where he has been employed since. Between 1990 and 1994 he collected unemployment and worked in law office at a substantially lower salary than he previously received. From the time he was a boy, the defendant has collected stamps, baseball cards, baseball memorabilia, coins and other items. He admits to being a compulsive collector. This activity has consumed much of his time, some of the family's income and a lot of space in the marital home.
In 1982 the couple purchased the marital home located at 400 Bellview Road, New Haven for $67,500. The plaintiff contributed $20,000 that she received from her father. The parties borrowed $40,000 from relatives; $20,000 was borrowed from the plaintiff's mother, Giorgina Vitale; $10,000 was borrowed from the defendant's parents Aaaron and Ethelma Aronow, and $10,000 was borrowed from the defendant's late uncle, Erwin Schiffres. All of these loans are joint obligations and they are secured by mortgages. The parties value the home at $110,000 and have stipulated to the following balances for the foregoing loans: Vitale mortgage $10,400, Aronows' mortgage $18,802 and Schiffres' mortgage $8,802. The total indebtedness against the property is $38,004 which results in equity of approximately $72,000.
The defendant has valued his collectibles at $13,500. The court believes this valuation is too low, however, no evidence to establish a higher value was presented. The court notes that the defendant spent more than $6,000 on his collectibles during 1998 and 1999. The defendant owns CT Page 3734 a variable annuity with a value of $4,100 and he has contributed $16,671 to his nonvested pension from the city of New Haven. In addition to the other debts discussed herein, the defendant's financial affidavit shows bank and credit card debt of approximately $31,000. Most of this debt accumulated after the parties paid down their credit cards, discussed below. Some of this debt may be a joint obligation of the parties. The parties declined an invitation by the court to research these accounts and stipulate which of these obligations may be joint. The defendant testified that he intends to file bankruptcy.
In 1998 the couple was burdened with debt which included the plaintiff's student loans of approximately $46,000 and credit card debt in the amount of approximately $22,000. They were fortunate that the plaintiff's mother, Giorgina Vitale, was in a position to lend them money; by notes signed on May 10, 1998, they borrowed $40,000 from her. This borrowing took the form of a $20,000 joint obligation, evidenced by two notes, and each party individually signed a note for $10,000. The initial purpose of these loans was to pay down the student loans. After discussion, the parties decided to use a portion of the borrowed funds to pay down their credit cards because the credit card debt carried a higher interest rate than the student loans. In 1998 approximately $22,000 was used to pay down the credit card accounts to, essentially, zero balances. The parties are in dispute as to how the remaining $18,000 was spent. The plaintiff acknowledges that at least $10,000 was used to pay down her student loans; the defendant believes that all of the remaining $18,000 was applied to the student loans. There is currently a balance of approximately $26,000 on the student loans.
Both parties offer different reasons for the breakdown of the marriage. The plaintiff testified that, in general, the marriage was difficult at best. The parties disagreed on money, child raising, religion and other topics. The parties did endure until the plaintiff perceived a breach of trust on the part of the defendant. The plaintiff discovered in 1997 that the defendant had an affair with a co-worker. Although the defendant promised to end the relationship, in 1999 the plaintiff discovered that the relationship had continued. She also learned that between 1997 and 1999 the defendant had lent this co-worker approximately $15,000. The defendant admitted to the relationship and further testified it arose from the fact that his emotional needs were not being met by the plaintiff. He stated that the plaintiff belittled him in front of the children and made him feel inadequate.
Much of the money lent by the defendant to this co-worker came from cash advances on the credit cards which previously were paid down with the proceeds of the borrowing from Mrs. Vitale. The defendant was so desperate to find money to lend this co-worker he took $2,100 from his CT Page 3735 daughter Emily's bank account; this money has not been returned.
In this marriage it appears that neither party nurtured the other; the husband and the wife both had unmet needs. The court does conclude that the precipitating cause for the breakdown of the marriage was the conduct of the defendant by his relationship with the co-worker.
The parties agree that they should have joint legal custody of their children; they do not agree on the children's residence or a visitation schedule. The defendant asks the court to modify the pendente lite visitation order to provide for essentially shared custody of Jacob and expanded visitation with Emily. The plaintiff desires that the pendente lite orders regarding custody and visitation remain in place.
 DISCUSSION
In formulating its orders the court has considered the provisions of C.G.S. § 46b-81, § 46b-82, § 46b-62 and § 46b-56. The court is mindful that the defendant's prospective bankruptcy may affect his obligations to relatives, and it may impact upon the plaintiff if there are joint financial obligations. In his proposed orders the defendant allows a transfer of his interest in the jointly owned home to the plaintiff, and he does not seek return of his equity. The court concludes that transfer of the defendant's $36,000 in equity in the marital home substantially satisfies the alimony which should be paid to the plaintiff upon a consideration of the factors contained in §46b-82. At the outset, the court does not feel it necessary to depart from the traditional approach of having the full owner of the property assume the encumbrances against the property.
With regard to the $40,000 borrowed from Giorgina Vitale in 1998, the court cannot ignore the fact that a substantial portion of the borrowed funds was used to reduce credit card debt that the parties accumulated during the course of their marriage, and that at least $10,000 was used to pay down the plaintiff's student loans. On this borrowing there is presently due $29,500 comprised as follows: $16,000 due on the original $20,000 joint obligation, $3,500 due on the plaintiff's sole promissory note in the original amount of $10,000, and $10,000 due on the defendant's sole $10,000 note. The court determines that it is fair and equitable for the defendant to be responsible for one half of the current balance due on this borrowing; $14,750. Ten thousand dollars of this responsibility is represented by the $10,000 sole note from the defendant to Ms. Vitale. The court believes that it is best for all concern that the plaintiff be responsible for the actual payment of the parties 1998 joint notes to Ms. Vitale. The defendant is to pay to the plaintiff lump sum alimony, provided for in the orders, in the amount of $4,750 to CT Page 3736 fulfill his responsibility on this borrowing.
The court also concludes that the defendant should pay the plaintiff additional lump sum alimony in the amount of $13,000. This is based upon the needs of the plaintiff in connection with repaying her student loans.
In his proposed orders the defendant implies that he has the ability to obtain a release of the indebtedness to Erwin Schiffres which encumbers the family home. For this reason the court, in its orders, provides the defendant the option of partially satisfying the $17,750 lump sum alimony by releasing the plaintiff of her $8,802 liability on the Schiffres' mortgage.
As to the matters pertaining to the children, the court regrets that it was not provided the benefit of a family relations evaluation or a report from a guardian/attorney for the minor children. In matters of custody and visitation the court is guided by the best interest of the children, not the wishes of the parents. The parties did enter into an agreement for pendente lite orders for custody and visitation on September 7, 2000 which was preceded by a family relations mediation. The court finds that because of the absence of probative evidence to the contrary, the current pendente lite orders are in the best interest of the children.
 ORDERS
1. The custody and visitation orders contained in pendente lite orders entered by the court on September 7, 2000, attached hereto as exhibit A, are made orders in this judgment.
2. The defendant shall pay child support to the plaintiff in the amount of $164 per week in accordance with the child support guidelines.
3. The defendant shall maintain the minor children as beneficiaries on any health insurance provided through his employer. The parties shall share the costs of uninsured health care expenses for the minor children including mental health services, in accordance with the child support guidelines as follows: plaintiff 67%, defendant 33 %.
4. The parties shall share the costs of child care provided for each of the children during the plaintiff's regular work week, including the cost of after school programs and summer camps. The parties respective contribution shall be based upon the child support guideline percentages.
5. Each party shall be entitled to claim one of the minor children as a CT Page 3737 dependent on their federal and state tax returns. When only one minor child remains the parties shall alternate the years at which they shall claim the remaining child with the plaintiff having the dependent exemption for the first such year.
6. The plaintiff shall designate the minor children as beneficiaries of her $200,000 Kemper life insurance policy presently in effect and shall maintain same until the children attain the age of majority. The defendant shall designate the minor children as beneficiaries of his $200,000 Zurich life insurance policy presently in effect and shall maintain same until the children attain the age of majority.
7. The defendant shall quitclaim his interest in the family residence at 400 Bellview Road, New Haven to the plaintiff. The plaintiff shall be responsible for and hold the defendant harmless on any indebtedness encumbering the property and shall indemnify him in the event he becomes obligated to make any payments on said indebtedness.
8. The defendant shall pay lump sum alimony to the plaintiff in the amount of $17,750 at the rate of $50 per week for a period of 355 weeks. These payments shall not be modifiable for any reason and shall not be included in the plaintiff's income nor treated as deductible by the defendant for tax purposes. If, within 30 days of the date of this judgment, the defendant provides a release of the mortgage from the parties to Erwin Schiffres dated June 17, 1982 encumbering the premises located 400 Bellview Road, New Haven, he shall be entitled to a credit of $8,800 against this lump sum alimony obligation. Such credit shall not delay or postpone the first weekly payment of this alimony obligation which shall be 30 days from the date of judgment.
9. The plaintiff shall retain and use the Toyota Tercel and the defendant shall retain and use the Toyota Camry and each shall have sole ownership of such vehicle. The parties will promptly execute any documents necessary to effectuate that order.
10. The plaintiff shall retain sole ownership of the personal property in her possession including her jewelry and silver. The plaintiff shall retain the bank accounts shown on her affidavit totaling $2,377, the Fleet stock valued at $1,671, and her IRA and TIAA/CREF having a combined value of $18,168.
11. The defendant shall retain his collectibles, his New Haven savings checking account having a balance of $900, his variable annuity from Mass. Mutual valued at $4,100 and his nonvested pension contribution balance of $16,671. CT Page 3738
12. The Merrill Lynch account is assigned to the defendant husband.
13. The joint tax refunds being held in escrow shall be divided equally between the parties.
14. The defendant is to return the sum of $2,100 to his daughter Emily's bank account within 30 days of the date of this judgment.
15. The defendant is to be solely responsible for his $10,000 loan to Giorgina Vitale dated May 10, 1998. The plaintiff is to be solely responsible for her sole promissory note to Giorgina Vitale dated May 10, 1998.
16. The plaintiff shall be solely responsible for and shall hold the defendant harmless from any liability arising out of two joint notes of the parties to Giorgina Vitale each in the amount of $9,999 dated May 10, 1998.
17. Unless specifically provided for herein, the plaintiff shall be solely responsible for any and all debts shown on her financial affidavit and shall hold the defendant harmless with regard to said debts and indemnify him in the event he become obligated to make any payments with regard to said debts.
18. Unless specifically provided for herein, the defendant shall be solely liable for any and all other debts shown on his financial affidavit and he shall hold the plaintiff harmless with regard to said debts and indemnify her in the event she becomes obligated to make any payments with regard to said debts. This obligation is in the nature of spousal support and shall be nondischargable in bankruptcy.
19. Each party shall be responsible for their own counsel fees.
20. The stipulation dated March 8, 2001 regarding personal property is incorporated by reference and made orders of the court.
21. The plaintiff shall be restored to the name of Mariam E. Vitale.
Domnarski, J
 Exhibit "A"
Aronow v. Aronow
Docket No.: FA 99-0429349
CT Page 3739
CUSTODY and VISITATION
A. The parties shall retain joint custody of their minor children, who shall reside primarily with the Plaintiff, and shall be with the Defendant in accordance with, but not limited to, the following schedule.
B. 1. The children shall be in the care of the Defendant as follows:
 a) Emily only, every Wednesday from 5:30 p.m. to 9:30 p.m.
 b) Jacob only, every Thursday from 5:30 p.m. to 9:30 p.m.
 c) Both children every other weekend, from Friday at 6:00 p.m. to the start of school on Monday morning. If Monday is a school holiday, the children shall remain with the Defendant until the start of school on Tuesday morning.
 d) Both children every July 3rd (Jacob's birthday) every Labor Day, four nights of Chanukah, the second night of Passover and every New Year's Day.
 e) Both children every other Thanksgiving Day, beginning with Thanksgiving Day, 2000.
2. The parties shall alternate the winter (February) and spring (April) school recesses, with the Plaintiff having Winter, 2001 and the Defendant, Spring, 2001. The parties shall divide the Christmas school recess, with the Defendant having the first half and the Plaintiff having the second half. Each party shall have the children for one week (7 days) of vacation during each summer, the weeks to be designated by May 31st
of each year. The parties recognize that the use of summer camp is necessary to enable them to carry on their employment and therefore each will seek to exercise their summer visitation at times when camp may not be available.
3. The children shall be in the care of the Plaintiff at all other times, specifically including every July 4, every Rosh Hashanah (both nights), every Yom Kipper (eve and day), Emily's birthday, New Year's Eve, first night of Passover, and four nights of Chanukah.
4. Where a specific day conflicts with a general visitation, the CT Page 3740 specific day shall prevail. For example, if the first night of Passover falls during a Spring recess, the Plaintiff's entitlement to the first night prevails.
C. Neither party shall make any unilateral decisions or take unilateral actions regarding matters of substance affecting the health, education and care of their children, and mutual discussion and agreement shall be necessary concerning such matters as the place of residence of the children; the time and occasions each party will spend with the children; selection of schools or summer camps; non-emergency major medical, dental or psychological treatment; trips of more than 100 miles distance (one-way) unescorted by either party, and; the incurring of any financial obligations that may impose any responsibility for payment on the other party.
D. Both parties recognize that it is incumbent upon them to encourage and enhance the children's contact with each parent, and to this end they agree that neither shall make any arrangements affecting the children that might interfere with any time the child is to spend with either party without first engaging in mutual consultation and discussion.
E. The parties will keep each other informed about the children's progress in school, social activities, and other similar matters concerning the children.
F. Each party shall have full and complete access to all records, memoranda, and any other communications emanating from all persons concerned with the health, welfare, maintenance and education of the children and shall be entitled to confer with any such individuals. To the extent that any third party requires authorization from one party before communicating with the other, such authorization shall be promptly furnished.
G. The parties shall have reasonable access to the children while they are with the other party, including access by mail and telephone during reasonable hours of the day and evening. If the Defendant wishes, he may have daily telephone contact with the children.